O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARGARET L. FERRARA,                    )    NO. EDCV 11-00661-MAN
                                        )
                Plaintiff,              )
                                        )    MEMORANDUM OPINION
        v.                              )
                                        )    AND ORDER
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
                Defendant.              )
_____)


        Plaintiff filed a Complaint on April 27, 2011, seeking review of
the denial of plaintiff's application for a period of disability and
disability insurance benefits ("DIB").  On May 17, 2011, the parties
consented, pursuant to 28 U.S.C. § 636(c), to proceed before the
undersigned United States Magistrate Judge.  The parties filed a Joint
Stipulation on December 16, 2011, in which:  plaintiff seeks an order
reversing the Commissioner's decision and remanding this case for the
payment of benefits or, alternatively, for further administrative
proceedings; and the Commissioner requests that his decision be affirmed
or, alternatively, remanded for further administrative proceedings.

1

2

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

3

4      On October 21, 2008, plaintiff protectively filed an application

5  for a period of disability and DIB.  (Administrative Record ("A.R.")

6  10.)  Plaintiff, who was born on December 12, 1953 (A.R. 19),[1] claims to

7  have been disabled since January 3, 2007 (A.R. 10, 12), due to:  "post-

8  traumatic cervical radiculopathy; impingement syndrome left shoulder;

9  rotator cuff tear left shoulder; adhesive capsulitis left

10 costochrondritis; right shoulder pain from past 2 surgeries; upper back

11 pain and headaches due to right shoulder injury while working as an

12 operating room nurse; and surgery of anterior cervical disc fusion."

   (A.R. 14; citations omitted.)

13

14      After the Commissioner denied plaintiff's claim initially and upon

15 reconsideration, plaintiff requested a hearing.  (A.R. 10.)  On January

16 13, 2010, plaintiff, who was represented by an attorney, appeared and

17 testified at a hearing before Administrative Law Judge Mason D. Harrell

18 (the "ALJ").  (A.R. 22-61.)  Medical expert Samuel Landau, M.D., and

19 vocational expert David A. Rinehart also testified.  (*Id.*)  On February

20 10, 2010, the ALJ denied plaintiff's claim (A.R. 10-21), and the Appeals

21 Council subsequently denied plaintiff's request for review of the ALJ's

22 decision (A.R. 1-3).  That decision is now at issue in this action.

23 ///

24 ///

25 ///

26

27      [1]   On the alleged disability onset date, plaintiff was 53 years
   old, which is defined as an individual closely approaching advanced age.
28 (A.R. 19; citing 20 C.F.R. § 404.1563.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2012, and has not engaged in substantial gainful activity since January 3, 2007, the alleged onset date of her disability. (A.R. 12.) The ALJ determined that plaintiff has the severe impairments of "bilateral shoulder degenerative arthritis and internal derangement," "post-op cervical decompression fusion of the neck," and "possible mild left carpal tunnel syndrome" but does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (A.R. 12-13.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform a significant range of light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

[plaintiff] can stand, sit, and walk 6 hours in an 8-hour work day, with normal breaks such as every 2 hours, [plaintiff] can sit, stand, and walk up to 3/4 of the time and should change positions as required; [plaintiff] can climb stairs, but is precluded from climbing ladders, heights, and balancing; [plaintiff] can perform occasional fine manipulations such as keyboarding; [plaintiff] can perform frequent gross manipulation such as opening drawers; [plaintiff] is precluded from extreme neck motion, and her head should be in a

3

comfortable position most of the time whereby her head is in a fixed position only 15 minutes at a time; [plantiff] is precluded from above the shoulder work on both sides; [plaintiff] can work in a normal office environment, free of excessive noise; [plaintiff] can use headsets for phones; and [plaintiff] is precluded from driving.

(A.R. 13.)

The ALJ found that plaintiff was unable to perform her past relevant work as a registered nurse. (A.R. 19.) However, based upon his RFC assessment for plaintiff and after having considered plaintiff's age, education,[2] work experience, and the testimony of the vocational expert, the ALJ found that "[plaintiff] has acquired work skills from [her] past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy," including that of "nurse consultant." (A.R. 20.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from January 3, 2007, through February 10, 2010, the date of the ALJ's decision. (A.R. 20-21.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. <u>Orn v. Astrue</u>, 495

---

[2] The ALJ found that plaintiff has at least a high school education and is able to communicate in English. (A.R. 19.)

4

F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins

v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

## DISCUSSION

Plaintiff claims the ALJ failed to consider properly:   (1) the opinions of her treating physicians; and (2) her subjective symptoms and credibility.  (Joint Stipulation ("Joint Stip.") at 3-9, 14-18.)

**I.   The ALJ Failed To Set Forth Specific And Legitimate Reasons For Rejecting The Opinions Of Plaintiff's Treating Physicians.**

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."   Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant.  Magallanes, 881 F.2d at 751.  When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons.  Lester v.

Chater, 81 F.3d 821, 830 (9th Cir. 1995).  When contradicted by another doctor, as in this case, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record.  *Id.*

### A.   Dr. Jon McLennan

In his decision, the ALJ rejected the opinion of Jon McLennan, M.D., an orthopedic surgeon, in favor of that of non-examining, medical expert Samuel Landau, M.D., a Diplomat of the American Board of Internal Medicine, because Dr. McLennan treated plaintiff for orthopedic injuries at issue in her workers' compensation action.  The ALJ opined that:

> [T]he workers' compensation system is adversarial.  Often, the
> [plaintiff]'s treating physician for workers' compensation
> purposes serves as an advocate for the [plaintiff], and
> describes excessive limitations to enhance the [plaintiff]'s
> financial recovery.  The physicians used by either party in
> workers' compensation cases are often biased and do not
> provide truly objective opinions.  The [plaintiff] has
> multiple physical medical records tied to the workers'
> compensation case.  The standard for review in a workers'
> compensation case is not the same as Social Security
> disability.

(A.R. 15.)  The ALJ also rejected numerous temporary total disability statements completed by Dr. McLennan, because they:  (1) allegedly are not supported by the objective medical evidence;  (2) involve a

7

determination "reserved to the Commissioner"; and (3) "are not supplemented by any objective explanations or treatment records." (A.R. 17.)

The ALJ's first reason for rejecting Dr. McLennan's opinion -- *to wit*, that workers' compensation physicians, like Dr. McLennan, are "often biased and do not provide objective opinions" -- is unavailing. The ALJ has failed to point to, and the record does not contain, *any* evidence of impropriety or bias on the part of Dr. McLennan. *See* Lester, 81 F.3d at 832 ("'The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits'")(citation omitted); *see also* Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)(noting that the source of report is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for opinion). Further, an ALJ "may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002)(citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984)(holding that by failing to consider medical reports submitted in state workers' compensation proceedings the ALJ failed to weigh all the evidence of record)). Instead, "[t]he ALJ must 'translate' terms of art contained in [workers' compensation medical reports and] opinions into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determinations. Booth, 181 F. Supp. 2d at 1106. Accordingly, the ALJ's first rationale does not constitute a specific and legitimate reason for rejecting the opinion of Dr.

McLennan.

The ALJ's second reason for rejecting the opinion of Dr. McLennan -- *to wit*, that Dr. McLennan's opinion is not supported by the objective medical evidence -- is both conclusory and incorrect. *See* Regennitter v. Comm'r of SSA, 166 F.3d 1294, 1299 (9th Cir. 1999)(noting that "conclusory reasons will not justify an ALJ's rejection of a medical opinion"); Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim."). It is also belied by the record. Indeed, contrary to the ALJ's statement, Dr. McLennan's progress notes are supported by objective findings. (*See, e.g.,* A.R. 290 - 11/16/06 (objective findings include, "[l]oss of strength," "[p]aresthesias," and "[l]oss of ROM [(range of motion)]"); A.R. 289 - 12/21/06 ("[l]oss of strength, "[p]aresthesias," and grip strength testing); A.R. 239 - 01/04/07 ("[l]oss of strength," grip strength testing, and left carpal tunnel surgery recommended); A.R. 264 -04/20/07 ("[e]ffusion," "[l]axity," [l]oss of motion," and "CT [scan]") A.R. 238 - 05/08/07 ("[p]aresthesias" and grip strength testing); A.R. 263 - 08/09/07 ("[l]axity," "[l]oss of strength," "[l]oss of ROM in [upper extremities]," and grip strength testing); A.R. 240 - 01/31/08 ("[a]trophy," "[l]oss of strength," and "[l]oss of ROM [in the upper extremities]").) Accordingly, the ALJ's second reason cannot constitute a specific and legitimate reason for rejecting the opinion of Dr. McLennan.

9

The ALJ's third reason for rejecting the opinion of Dr. McLennan is misguided.  While it is true that a treating physician's opinion on the matter of ultimate disability is not determinative or entitled to special weight, "a treating physician's *medical* opinions are generally [entitled] to more weight." Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008)(citing 20 C.F.R. § 404.1527(d)(2)).  A medical opinion "'reflect[s] judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions.'" *Id.* (citing 20 C.F.R. § 404.1527(a)(2)).  Here, beyond finding that plaintiff was temporarily disabled, Dr. McLennan diagnosed plaintiff with, *inter alia*, "posttraumatic cervical radiculopathy," "impingement syndrome," "rotator cuff tear," "adhesive capsulitis," and "costochondritis."[3] (*See, e.g.,* A.R. 240, 250, 261, 263-64, 289-90.)  Additionally, Dr. McLennan opined that plaintiff had several limitations and restrictions resulting from her impairments, including:  (1) "[l]imited overhead work [involving the right and left upper extremities]; (2) "[n]o lifting, pulling, or pushing greater than ten [pounds]"; and (3) "tak[ing] a 10 minute stretch [break] every 60 minutes from keyboarding activity or prolonged writing."  (A.R. 253; *see* A.R. 288, 291.)  While the Commissioner correctly asserts that the ALJ's RFC assessment contains similar limitations to those found by Dr. McLennan, the ALJ appears to have rejected Dr. McLennan's more restrictive limitations, in part, because

---

[3]     Some of Dr. McLennan's treatment notes include diagnoses of: "compressive neuropathy of the median nerve in the transverse segment of the left arm"; and carpal tunnel in the left hand. (*See, e.g.,* A.R. 239 (carpal tunnel - left hand); A.R. 250 (compressive neuropathy - left arm).)

Dr. McLennan also rendered a non-dispositive opinion regarding the ultimate issue of disability. The ALJ's reasoning, however, does not constitute a legitimate reason, as required, for rejecting Dr. McLennan's opinion. *See* Boardman, 286 Fed. Appx. at 399 (finding that "while [the fact that the treating physician expressed an opinion regarding Boardman's ultimate disability and residual functional] may be a specific reason to reject a treating physician's medical opinion, it is not a legitimate one").[4]

The ALJ's fourth reason for rejecting Dr. McLennan's opinion is not legitimate. The ALJ rejects Dr. McLennan's progress notes from November 2006, through July 2008, because "they are not supplemented by any objective explanations or treatment records." (A.R. 17.) As an initial matter, Dr. McLennan's progress notes are supported by his earlier treatment records. Dr. McLennan's June 15, 2006 treatment note, for example, provides support for his later progress notes, because it details, *inter alia*, Dr. McLennan's: review of plaintiff's past medical, family, and social history; physical examination and diagnostic testing of plaintiff; and diagnoses and assessment of plaintiff's limitations/restrictions. (A.R. 245-54.) Indeed, the diagnoses and findings in Dr. McLennan's June 15, 2006 report largely mirror those in his later progress notes. Further, and contrary to the ALJ's statement, Dr. McLennan's progress notes are supported by objective findings, which

---

[4]   Moreover, while it is true that medical source opinions on issues reserved to the Commissioner, such as the determination of claimant's ultimate disability, are not determinative or entitled to special weight based on the source of the medical opinion, it is not true that the Commissioner is free to disregard this information. Social Security Ruling ("SSR") 96-8p, 1996 SSR LEXIS 5, at *21 n.8. Rather, the ALJ is instructed to consider such opinions in adjudicating a disability claim. *Id.*

are discussed above.  Thus, the ALJ's reason, again, does not constitute a specific and legitimate reason for rejecting Dr. McLennan's opinion.

Accordingly, for the aforementioned reasons, the ALJ failed to properly reject the opinion of Dr. McLennan.

B.  Dr. Darren L. Bergey

In a July 16, 2009 Orthopedic Surgeon's Consultation Report (the "July 2009 Report"), Darren L. Bergey, M.D., an orthopedic surgeon who treated plaintiff for several years, diagnosed plaintiff with: (1) left shoulder rotator cuff tear; (2) left shoulder acromioclavicular joint arthritis; (3) right shoulder impingement status post decompression; and (4) cervical C4-5 and C5-6 disc displacement status post discectomy and fusion. (A.R. 612.)  In so finding, Dr. Bergey noted that plaintiff was a "candidate for a left shoulder arthroscopy, distal clavicle resection, and rotator cuff repair," and Dr. Bergey recommended that plaintiff have a "consultation with Dr. Theodoro Gregorius to evaluate and treat her for her left shoulder as she has failed to improve despite conservative measures to this date." (*Id.*)  Dr. Bergey also noted that plaintiff has ongoing bilateral shoulder and neck pain notwithstanding surgeries on her neck and right shoulder. (A.R. 612-13.)  He opined that plaintiff could not perform sedentary duties and that her "ongoing neck pain is her disabling feature for which she should be awarded social security disability." (A.R. 613.)  Dr. Bergey further noted that he "d[id] not believe [plaintiff] should undergo any further surgery as she has had no significant improvement in the past." (*Id.*)  In addition, Dr. Bergey "d[id] not believe surgery on her left shoulder would fix her neck

12

pain."  (*Id.*)  Lastly, Dr. Bergey noted that plaintiff's work status remained permanent and stationary.  (*Id.*)

In rejecting the opinion of Dr. Bergey, the ALJ states the following:  "[t]he undersigned has read and rejected the Permanent and Stationary report, by Dr. Darren Bergey, M.D., dated July 16, 2009, which clearly indicates [plaintiff] is a candidate for left shoulder arthroscopy, distal clavicle resection, and rotator cuff repair." (A.R. 17; citation omitted.)  The ALJ's cursory summary of Dr. Bergey's July 16, 2009 report, however, does not constitute a specific and legitimate reason, as required, for rejecting the opinions and findings contained therein.  Accordingly, by failing to follow proper legal standards in summarily rejecting the opinion of plaintiff's treating physician, the ALJ committed reversible error.[5]

**II.   <u>The ALJ Failed To Give Clear And Convincing Reasons For Finding Plaintiff's Subjective Symptoms To Be Not Credible</u>.**

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered.  <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346

---

[5]     Although not entirely clear, to the extent the ALJ rejects Dr. Bergey's opinion because it was made in connection with plaintiff's State disability and workers' compensation claims and/or contained an opinion regarding disability, the ALJ's reasoning is unpersuasive for the reasons set forth *supra*.

(9th Cir. 1991); *see also* 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins v. SSA, 466 F.3d 880, 883 (9th Cir. 2006).  The factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation for truthfulness;  (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c).

An ALJ may not rely on a plaintiff's daily activities to support an adverse credibility determination when those activities do not affect the claimant's ability to perform appropriate work activities on an ongoing and daily basis. Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990).  As the Ninth Circuit noted in Lester, the ALJ must evaluate claimant's "'ability to work on a *sustained* basis.'"  81 F.3d at 833 (emphasis in original; citation omitted).  A claimant need not be "utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)(internal citations omitted).

14

In her Disability Report, plaintiff asserted that:  "[she] need[s] to take [her p]ain medication which affects [her] performance"; "[she] ha[s] to hold up [her] head with [her] hand or rest it after 10 minutes or [she] experience[s] upper back [pain] and headaches"; she is "very careful lifting things more than 10 pounds, and [she is] careful with [her] activity and motion"; she has "decreased [range of motion] in her right and left shoulders"; she has "trouble reaching and dressing and doing activities of normal living"; and she has pain in her upper back, head, right and left shoulders, and chest -- pain which worsens as the day progresses and/or if she is unable to take her medication or "get comfortable by position or activity change."  (A.R. 160.)   In her Disability Report - Appeals, plaintiff stated that she:  has "pain with activities of daily living"; has "difficulty [and] pain with dressing"; has "difficulty with [fixing her] hair"; has difficulties concentrating; experiences "headaches [and] pain when holding up [her] head[,]" writing[, or performing] computer work"; experiences nausea [and] muscle spasms [that] progress[s] to numbness in [her right and left] arms; and cannot drive while taking her medications.  She further stated that she tries to do what she can with respect to housework, driving, dressing, writing, reading, and walking the dog.  (A.R. 191.)   She stated, however, that she can perform such activities for only 10 minutes if she is unable to hold up her head and/or take medication.  (*Id.*)

In addition, at the January 13, 2010 hearing, plaintiff testified, *inter alia*, that she:  can stand only for 10 minutes at a time before she needs to change positions or sit down (A.R. 38); cannot sit for more than 10 minutes at a time and must "raise [her] leg up to help alleviate

1    . . . the pressure"[6] (A.R. 39); "*tr[ies]* to do a 15-minute walk" daily

2    (A.R. 41; emphasis added); attends a daily prayer meeting (*id.*); and has

3    difficulties performing household chores (A.R. 42).  She also testified

4    that her pain medication makes her groggy and nauseous.  (A.R. 46.)

5

6        The ALJ found that plaintiff has the severe impairments of

7    "bilateral shoulder degenerative arthritis and internal derangement,"

8    "post-op cervical decompression fusion of the neck," and "possible mild

9    left carpal tunnel syndrome." (A.R. 12.)  The ALJ cited no evidence of

10   malingering by plaintiff.  Accordingly, the ALJ's reason for rejecting

11   plaintiff's credibility must be clear and convincing.

12

13       In rejecting plaintiff's statements regarding her subjective

14   symptoms and limitations, the ALJ stated that "[plaintiff]'s statements

15   concerning the intensity, persistence and limiting effects of [her]

16   symptoms are not credible to the extent they are inconsistent with [his

17   RFC] assessment." (A.R. 15.)  As noted *supra*, plaintiff testified to

18   various symptoms and limitations.  While the ALJ may find these symptoms

19   and limitations to be not credible, the ALJ's boilerplate statement is

20   not "sufficiently specific" to allow this Court to determine whether the

21   ALJ rejected plaintiff's statements on permissible grounds.  Therefore,

22   the ALJ's reasoning does not constitute a clear and convincing reason,

23   as required, for finding plaintiff to be not credible.

24

25       To further discredit plaintiff, the ALJ implies that plaintiff's

26

27   ───────────────

28       [6]    An ALJ "must consider limitations and restrictions imposed by
     *all* of an individual's impairments, even those that are not 'severe.'"
     SSR 96-8p, 1996 LEXIS 5 at *14 (emphasis added).

daily activities are inconsistent with her alleged symptoms and limitations. Specifically, the ALJ states that:

> Despite [plaintiff's] assertion of disability, [plaintiff] acknowledged that she *tries* to do housework; driving; dressing; writing; reading; and walking the dog . . . . [Plaintiff] revealed she will do these things for about 10 minutes, and then she either holds up her head or takes medication.

> Moreover, [plaintiff] revealed in testimony that she is able to take a 15 minute walk with friends in the morning; she is able to attend daily morning prayer; and then she comes home and does what she can, including making beds, putting away dishes, and getting items from the washer.

(A.R. 14; emphasis added.) The ALJ does not explain, however, *how* plaintiff's daily activities are at odds with her alleged symptoms and resulting limitations. *See* <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998)("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

Critically, the ALJ also does not explain how plaintiff's basic activities, light household chores, and other activities translate into

the ability to perform full-time work.[7]  *See* <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001)(noting that the "mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability").  Therefore, the ALJ's reasoning does not constitute a clear and convincing reason for finding plaintiff to be not credible.

Accordingly, for the aforementioned reasons, the ALJ failed to give clear and convincing reasons for finding plaintiff to be not credible.[8]

**III. Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where there are outstanding issues that must be resolved before a determination of

---

[7]     Although plaintiff attempts to help with household chores, plaintiff testified that she has difficulties putting away dishes and making the bed, and her husband retrieves items from the washing machine.  (A.R. 42.)

[8]     While the Commissioner now offers other reasons to explain the ALJ's credibility determination, the Court cannot entertain these post hoc rationalizations.  *See, e.g.,* <u>Connett</u>, 340 F.3d at 874 (finding that "[i]t was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

1   disability can be made, and it is not clear from the record that the ALJ

2   would be required to find the claimant disabled if all the evidence were

3   properly evaluated, remand is appropriate. *Id.* at 1179-81.

4

5       Remand is the appropriate remedy to allow the ALJ the opportunity

6   to remedy the above-mentioned deficiencies and errors. *See, e.g.,*

7   Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for

8   further proceedings is appropriate if enhancement of the record would be

9   useful); *see* Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir.

10  1993)(ordering remand so that the ALJ could articulate specific and

11  appropriate findings, if any existed, for rejecting the claimant's

12  subjective pain testimony). On remand, the ALJ must correct the above-

13  mentioned deficiencies and errors. After doing so, the ALJ may need to

14  reassess plaintiff's RFC, in which case additional testimony from a

15  vocational expert likely will be needed to determine what work, if any,

16  plaintiff can perform.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

2

3

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   September 24, 2012

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

20